2024 IL App (3d) 230791

Opinion filed April 11, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0791 Circuit No. 23-CF-2213 |
| CHRISTIAN P. MIKOLAITIS, | ) ) ) | The Honorable Margaret M. O'Connell, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justice Brennan specially concurred in the judgment, with opinion.
Presiding Justice McDade dissented, with opinion.

**OPINION**

¶ 1     The defendant, Christian P. Mikolaitis, appeals from the circuit court of Will County's order denying pretrial release, arguing the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate any threat he posed.

¶ 2                         I. BACKGROUND

On December 12, 2023, the defendant was charged with attempted first degree murder (Class X) (720 ILCS 5/8-4(a), 9-1(a)(2) (West 2022)) and aggravated battery (*id.* § 12-3.05(f)(1), (h)). The State filed a verified petition to deny pretrial release, alleging defendant was charged

with a forcible felony, and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(1) (West 2022)).

¶ 3    The factual basis provided that on December 10, 2023, at 8:30 p.m. officers responded to Challenge Fitness for a victim, Alec Geibel, who had been stabbed multiple times. Geibel was taken to Silver Cross Hospital and was subsequently transported to Chicago as a trauma transport. He gave a brief statement while at Silver Cross, stating that the defendant stabbed him and was driving a gray Hyundai Elantra with red trim. At 10:49 p.m. the defendant's mother called 911 and stated that the defendant told her he had stabbed Geibel and provided a description of the car. At 12:39 a.m. the defendant's girlfriend called 911 and stated that she had met the defendant at a gas station, and he told her he had stabbed someone and provided details on how he did it. She further stated that the defendant had picked up Geibel, who was going to buy Percocet from the defendant. The defendant parked the car, pretended to look for his phone in the back seat, opened the passenger door, and stabbed Geibel multiple times. He then left Geibel and drove away. The defendant also told his girlfriend that he hated Geibel. The defendant was apprehended at 1:31 a.m. in the vehicle described by Geibel and the defendant's mother. The front passenger seat had knife punctures.

¶ 4    A pretrial risk assessment was completed, but because the defendant declined to participate, it included limited information. The criminal history indicated that the defendant had a pending case for failing to notify of a damaged or unattended vehicle.

¶ 5    A hearing was held on the petition on December 18, 2023. The State discussed some of the factors that applied to the case, including (1) it was a violent offense, (2) Geibel was a specific person to whom the defendant posed a threat, (3) the defendant told people what happened, and

2

(4) the defendant had access to and possessed a weapon, being a knife. The State argued that if the defendant was released, Geibel's safety would be at risk. Defense counsel asked for the defendant to be placed on electronic monitoring, noting that he was 19 years old and had received mental health treatment for depression, anxiety, and bipolar disorder. The circuit court asked whether the defendant was currently taking his antipsychotic medicine, to which he said no. Defense counsel indicated that the last time the defendant took his medication was in September when he "had an admission for mental health."

¶ 6        The court granted the State's petition, finding that the proof was evident that the defendant committed a detainable offense and that he posed a real and present threat to the safety of Geibel. The court also found that there were no conditions that could mitigate the threat the defendant posed, stating,

> "I understand the concept of mental illness, but it does not appear as if the defendant was taking his medicine which was previously prescribed to him in order to combat his antipsychotic behavior along with his bipolar, so that is a greater concern to me and it certainly poses a question as to whether or not he would be in a position where he could abide by the conditions of pretrial release."

¶ 7                                        II. ANALYSIS

¶ 8        On appeal, the defendant argues that the State failed to show by clear and convincing evidence that no condition or combination of conditions could mitigate any threat he posed. We review a circuit court's factual findings in pretrial release cases under the manifest weight of the evidence standard, but the court's ultimate decision to grant or deny the State's petition to detain is considered for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*;

3

see also *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19. We review issues of statutory construction *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45.

¶ 9       Every person charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1(a). The State then has the burden of proving by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to any person, persons, or the community, or has a high likelihood of willful flight to avoid prosecution, and (3) no conditions could mitigate either the defendant's dangerousness or risk of flight. *Id.* § 110-6.1(a), (e).[1] When determining a defendant's dangerousness and the conditions of release, the statute includes a nonexhaustive list of factors the court can consider. *Id.* §§ 110-6.1(g), 110-5. Section 110-10 provides a nonexclusive list of conditions that can be applied to individuals placed on pretrial release. *Id.* § 110-10.

¶ 19      Section 110-6.1(g) indicates that the court, when determining dangerousness, should consider evidence the State presented that applies to a certain set of factors. *Id.* § 110-6.1(g). Likewise, section 110-5(a) states that the court shall consider a set of factors when determining which conditions of pretrial release, if any, would ensure his appearance or mitigate his dangerousness. *Id.* § 110-5(a). The section specifically states that the court shall consider these factors based on the available information, thus indicating that the State shall present evidence supporting these factors. *Id.*

---

[1] While the dissent says we "misstate the law" of section 110-6.1(e)(2), this statement of law is a clear summary of the State's requirements under the entirety of section 110-6.1, considering both subsections (a) and (e). It is thus the dissent who misconstrues this paragraph.

4

¶ 10     The dissent's reading of the statute would require the State to present *argument* as to each one of the potential conditions and why it should not apply to the defendant. However, the factors set forth in section 110-5 provide the evidentiary corollary to the potential conditions of release. For example, the State's presentation of evidence that the defendant was on probation, parole, or pretrial release at the time of the offense (*id.* § 110-5(a)(3)(B)) provides the evidentiary support for the court's finding that the defendant could not comply with the conditions that he abide by the law and the orders of the court (*id.* § 110-10(a)(2), (4)). It is unclear what evidence the dissent would require the State to present to meet its burden as to the conditions of release.

¶ 11     Here, the State provided argument and evidence regarding the factors set forth in section 110-5. *Id.* § 110-5. Moreover, defense counsel indicated to the court that the defendant had mental health issues and had been prescribed medication. When the court inquired into the medication, the defendant indicated that he was not taking his prescribed medication and counsel stated that he had not been taking it since he was admitted to a mental health facility in September. The court did not err in finding that the defendant's failure to abide by his doctor's directives indicated that he would not follow the conditions placed on him by the court. Therefore, the court did not abuse its discretion in granting the petition.

¶ 12                                   III. CONCLUSION

¶ 13     The judgment of the circuit court of Will County is affirmed.

¶ 14     Affirmed.

¶ 15     JUSTICE BRENNAN, specially concurring:

¶ 16     I write to emphasize my disagreement with the dissent's suggestion that the Code obligates the State to argue or prove why each condition or combination of conditions set forth in section 110-10(b) cannot mitigate the threat a defendant poses to a particular victim. Indeed, the

5

unworkability of such a requirement is laid bare when one considers that the section 110-10(b) conditions are not even an exhaustive list of possible conditions. 725 ILCS 5/110-10(b)(9) (West 2022) (allowing court to also require "such other reasonable conditions as the court may impose[.]").

¶ 17    Section 110-6.1(d)(1) prescribes the contents of the State's petition, requiring that "[t]he petition shall be verified by the State and shall state the grounds upon which it contends the defendant should be denied pretrial release, including the real and present threat to the safety of any person or persons or the community, based on the specific and articulable facts or flight risk, as appropriate." *Id.* § 6.1(d)(1). Conspicuously absent from the required content of the petition is any requirement that the State specifically address a non-exhaustive list of conditions that might arguably be imposed to mitigate a defendant's real and present threat.

¶ 18    Where a defendant's danger is proven by clear and convincing evidence, the Code does, of course, likewise require the State to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the threat. *Id.* § 6.1(e)(3). This burden, however, can be satisfied in a variety of ways: from the presentation of evidence to be sure, but also by common sense consideration of the factors listed in section 110-5(a)(1)-(7), including the nature of the offense, the strength of the case, the defendant's mental condition, the defendant's criminal history, the defendant's compliance with MSR or probation, and several others. The State's burden does not obligate it to specifically address the efficacy of every conceivable condition or combination of conditions. Rather, it is the trial court that must ultimately consider all it has heard and, if ordering detention, make written findings explaining "why less restrictive conditions would not avoid a real and present threat to the safety or any person or persons or the community." *Id.* § 6.1(h).

6

¶ 19 In the instant case, defendant blindsided the victim with a horrific knife attack because, in the defendant's own words, he "hated" the victim. Defendant refused to cooperate with his pretrial risk assessment. To the extent defendant's mental health issues may have played some role in the attack, this in no way supports that some condition or conditions short of detention would mitigate the threat he poses to the victim. To the contrary, defendant's non-compliance with his psychotropic medication regimen supports the opposite inference. Simply put, the trial court's detention decision was based upon a sufficient quantum of information and was anything but fanciful.

¶ 20 PRESIDING JUSTICE McDADE, dissenting:

¶ 21 By affirming the circuit court's detention decision in this case, the majority has excused the State from having to meet its legislatively mandated burden of proving by clear and convincing evidence that

"no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, for offenses listed in paragraphs (1) through (7) of subsection (a), or (ii) the defendant's willful flight for offenses listed in paragraph (8) of subsection (a)." 725 ILCS 5/110-6.1(e)(3) (West Supp. 2023).

Accordingly, I dissent from the majority's decision to affirm the circuit court's detention order.

¶ 22 Initially, I note that the majority has misstated the law contained in section 110-6.1(e). The majority maintains that under section 110-6.1(e)(2), the State must prove that "the defendant poses a real and present threat to any person, persons, or the community or had a high likelihood of willful flight to avoid prosecution." *Supra* ¶ 9. However, "willful flight to avoid prosecution" is not a phrase that appears in section 110-6.1(e)(2). 725 ILCS 5/110-6.1(e)(2) (West Supp. 2023).

7

That section only applies when the State has sought detention for offenses listed in section 110-6.1(a)(1) through (7), *i.e.*, only when the accused allegedly poses a safety risk. *Id.* In addition, the majority inaccurately summarizes the State's burden on the conditions element from section 110-6.1(e)(3). *Supra* ¶ 18. I have quoted that section above and do not need to repeat it here.

¶ 23      Turning to the merits, it is important in this case to differentiate between sections 110-5 and 110-10 of the Code. Section 110-5 provides guidance for the *court* when considering whether conditions exist that would, in part, "reasonably ensure the appearance of a defendant as required or the safety of any other person or the community." 725 ILCS 5/110-5(a) (West Supp. 2023). That section provides a nonexhaustive list of *factors* that are relevant to the court's decision, including "the nature and circumstances of the offense charged" (*id.* § 110-5(a)(1)) and "the history and characteristics of the defendant" (*id.* § 110-5(a)(3)). Section 110-5 also directs the court to take specific actions in certain circumstances. See, *e.g.*, *id.* § 110-5(c) (directing the court, if a defendant is to be admitted to pretrial release, to impose any conditions mandated by section 110-10 of the Code).

¶ 24      In contrast to section 110-5, section 110-10 addresses the actual *conditions* that can be imposed on pretrial release. *Id.* § 110-10. For example, section 110-10(a) addresses conditions that must be imposed if a defendant is admitted to pretrial release. *Id.* § 110-10(a). Section 110-10(b) includes a nonexhaustive list of conditions that can be imposed, such as requiring a defendant to obtain leave of court before departing the State (*id.* § 110-10(b)(0.05)) and prohibiting a defendant from possessing firearms or other dangerous weapons and from going to certain geographic areas or premises (*id.* §§ 110-10(b)(2), (4)).

¶ 25      The distinction between sections 110-5 and 110-10 is important because the State's explicit burden under section 110-6.1(e)(3) of the Code is that it must establish by clear and convincing

evidence, in relevant part, that "no condition or combination of conditions set forth in subsection (b) of section 110-10 can mitigate" either the safety risk the defendant poses or the risk of his or her "willful flight," depending on the basis for the State's detention request. *Id.* It would seem elementary, then, that for the State to meet its legislatively mandated burden under section 110-6.1(e)(3), it would address at a very minimum the conditions explicitly listed in section 110-10(b). See, *e.g.*, *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 15-19. Of course, not every conceivable condition needs to be addressed by the State to meet its burden under section 110-6.1(e)(3). But the language of that section shows that the legislature contemplated what conditions would arguably be applicable and mandated that the State present evidence and argument on them. The plain language of section 110-6.1(e)(3) makes it clear that the State *cannot* meet its burden under section 110-6.1(e)(3) by merely presenting evidence relevant to the factors the court is required to consider under section 110-5 when reaching its ultimate pretrial release decision. *Id.*

¶ 26 Whether the procedure mandated by section 110-6.1(e) is considered by the special concurrence to be unworkable is irrelevant. It is also a curious position because the procedure is essentially analogous to what transpires every day in criminal court—that is, a criminal defendant is presumed innocent; the State has a mandated burden so it presents evidence to satisfy that burden; if it fails to do so, the presumption prevails. In a pretrial release case such as this one, if the State satisfies its burden, the court can assess all factors available to it; it can fashion a novel or unique condition outside of the nonexhaustive list and still release the defendant on specific terms or it can deny release altogether. But it can only do so if the State first meets its burden of proof. This hardly seems unworkable—unless one just wants to ignore the statute and write his or her own law.

¶ 27     In this case, the State presented no evidence regarding any condition or combination of conditions that could mitigate the safety threat posed by Mikolaitis. Even though it may have presented evidence relevant to the factors the court is required to consider under section 110-5, the State could *not* meet its burden under section 110-6.1(e)(3) by presenting nothing more than that evidence. Because the State failed to present any evidence related to its burden under section 110-6.1(e)(3), it has failed to meet its burden and has essentially conceded that there *are* adequate conditions. Mikolaitis's argument on appeal is meritorious. The statutory presumption favoring pretrial release has not been rebutted and Mikolaitis cannot be detained, despite the horrific nature of the offense and the statutorily defined threat he poses. Accordingly, I would reverse the circuit court's decision and order the defendant's release.