**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240066-U

Order filed April 15, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0066 Circuit No. 24-CF-128 |
| OSCAR SALAZAR, | ) ) ) | Honorable Ann Celine O'Hallaren Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court did not abuse its discretion in granting the State's verified petition to deny pretrial release.

¶ 2     Defendant, Oscar Salazar, appeals from the circuit court's granting of the State's verified petition to deny pretrial release. For the reasons set forth below, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged on January 18, 2024, with two counts of aggravated fleeing and eluding a peace officer (Class 4) (625 ILCS 5/11-204.1(a)(1), (4) (West 2022)), aggravated speeding in a school zone (Class A) (*id.* § 11-605(e-5)(2)), and multiple petty traffic offenses. The State filed a verified petition to deny pretrial release, alleging defendant was charged with a felony that involved the threat of or infliction of great bodily harm or permanent disability or disfigurement, and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1.5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(1.5) (West 2022)).

¶ 5        The factual basis provided that officers received a call regarding a vehicle that fled from the police a few days previously. The officers located the car in a Jewel parking lot. After a short period of surveillance, the officers observed the car pull out of the Jewel parking lot onto the road. The officers trailed the car for about a mile while waiting for additional squad cars to assist. During this time, no lights or sirens were activated. Once additional units caught up, the officers, who were operating a marked squad car, turned on their lights and sirens in an attempt to effectuate a traffic stop. The suspect vehicle continued to drive at normal speeds and made no attempt to pull over. The suspect vehicle came to a stop at a stop sign and then started to increase its speed. The suspect vehicle approached another stop sign and disobeyed the sign. At this point, another officer pulled up parallel to the suspect vehicle and deployed a mobile spike strip (a device that can be remotely deployed from a squad car to deflate a tire and then it retracts back into squad). This disabled the right rear tire of the suspect vehicle. The suspect vehicle disobeyed two red lights and then turned west. The suspect then increased its speed to 65 miles per hour in a 40 mile per hour zone and continued to increase its speed. The suspect got up to 80 miles per hour in a 45 mile per hour zone.

¶ 6　　　　The pursuit continued to Route 53 where there was a red light, and all lanes were blocked by cars stopped at the light. The suspect maneuvered into the right turn lane to get around the cars that were stopped at the light and then proceeded through the intersection, while the light was red. The suspect vehicle then slowly continued at approximately 10 miles per hour, and the officers deployed more spike strips, disabling the front right tire. The suspect still did not pull over and attempted to get onto I-355. More spike strips were deployed, disabling the front driver's side tire. The suspect vehicle then finally rolled to a stop. Officers approached the suspect vehicle and broke the driver's side window. Defendant was identified as the driver of the vehicle and was given multiple commands to exit the vehicle by uniformed officers and refused. After refusing to get out of the vehicle, officers had to deploy their tasers.

¶ 7　　　　A pretrial risk assessment indicated that defendant was a high risk. He had "an extensive criminal history, and ha[d] been issued several failure to appear warrants in the past." At the time of the offense, defendant had been on pretrial release with GPS monitoring in a pending domestic violence case. Defendant's pretrial supervision officer indicated that defendant cut off his electronic monitoring device in November 2023 and had failed to report since then. He had a pending case for possession of a controlled substance as well.

¶ 8　　　　A hearing was held on January 18, 2024. The State provided the factual basis and noted that defendant had two pending cases at the time of his arrest, both of which had failure to appear warrants. The State said, "that indicates that the defendant will not listen to the Court and he will not follow the law." The State noted that defendant had previous convictions for fleeing and eluding and posed a danger to the community and the officers during his flight. The State further stated that defendant was a convicted felon and said,

"We do not believe that any conditions that this Court could set would ensure that the public is safe, based on the defendant's actions *** and his continuous previous actions, as well as to ensure that he will show up to court, because he does not show up to court, frankly; he does not follow the law; he does not listen to the Court; and he doesn't listen to any officers of the court, including police officers."

Defense counsel argued that defendant was not charged with a detainable offense because he did not intend to cause harm to anyone and stated that conditions could mitigate any threat he posed.

¶ 9        The court granted the petition, finding that the State met its burden by clear and convincing evidence. In doing so, the court found that defendant's actions "in his commission in the manner and method in which he committed the aggravated fleeing and eluding were felonies that involved the threat of or infliction of great bodily harm or permanent disability or disfigurement." Further, it stated,

"The manner and method in which the defendant operated his vehicle fleeing from police officers, violating numerous traffic control devices, taking maneuvers to drive around traffic that was on the road, going through traffic control device lights, speeding at 80 miles per hour in a 45 miles per hour zone on highways in DuPage County in which other vehicles were on the roadway, as well as officers pursuing, I certainly find that the manner and method in which he operated his vehicle did involve the threat of or infliction of great bodily harm, permanent disability, or disfigurement. At the very least, he was a person that might well have caused harm to the community. He also communicated his intent to inflict harm by his actions, so I find that the State has met the definition of threat."

¶ 10       Moreover, the court stated,

4

"The State does not have to show actually -- actual great bodily harm, just the threat of or infliction of great bodily harm. And, fortunately, there was no great bodily harm here, but the Court is not required to wait and see if the defendant would do that. The Court can assess the facts to see if his actions involved the threat of or infliction of great bodily harm, permanent disability or disfigurement, and driving a motor vehicle that way certainly qualifies based upon the specific articulable facts of the case."

¶ 11    The court noted that defendant was already on GPS and cut off his device, had warrants for failure to appear, and had an extensive criminal history, stating, "I also note the defendant was assessed as a high risk on the risk assessment. I've considered home detention and GPS; however, that can only reveal where the defendant is, it cannot prevent the defendant from committing the type of actions and the danger that he threatened here[.]" Accordingly, the circuit court granted the petition.

¶ 12                                II. ANALYSIS

¶ 13    On appeal, defendant argues that the court abused its discretion in granting the State's petition. Specifically, he argues that the State did not prove that he committed a detainable offense and that there were no conditions to mitigate any threat. We consider factual findings for the manifest weight of the evidence, but the ultimate decision to grant or deny the State's petition to detain is considered for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see also *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 14    Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a

5

verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(a), (e).

¶ 15        Section 110-6.1(g) indicates that the court, when determining dangerousness, should consider evidence the State presented that applies to a certain set of factors. *Id.* § 110-6.1(g). Likewise, section 110-5(a) states that the court shall consider a set of factors when determining which conditions of pretrial release, if any, would ensure his appearance or mitigate his dangerousness. *Id.* § 110-5(a). The section specifically states that the court shall consider these factors based on the available information, thus indicating that the State shall present evidence supporting these factors. *Id.*

¶ 16        We cannot say that the court abused its discretion in granting the State's petition. First, defendant argues that he was not charged with a detainable offense. While aggravated fleeing and eluding is not listed in the statute, the statute does include, "any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement." *Id.* § 110-6.1(a)(1.5). Here, defendant was charged with the felony offense of aggravated fleeing and eluding. The proffered facts surrounding this charged offense show that defendant fled from the officers at a very high rate of speed, disobeying three traffic control devices, on one occasion weaving around cars stopped at an intersection. Considering the nature and extent of this reckless driving as he fled the officers, the circuit court did not err in concluding that the manner in which defendant committed aggravated fleeing and eluding involved the threat of great bodily harm to other persons on the roadway. See *People v. Brannon,* 2024 IL App (2d) 240059-U, ¶¶ 19-21

6

(how defendant fled police threatened great bodily harm and constituted a forcible felony); see also *People v. Rodriguez,* 2023 IL App (3d) 230450, ¶ 10 (how defendant resisted police officer threatened great bodily harm and constituted a forcible felony). Defendant's reliance on the definition of "threat" in *People v. Giraud*, 2012 IL 113116, ¶ 14 (quoting Black's Law Dictionary 1618 (9th ed. 2009)), is unavailing, as *Giraud* involved an entirely unrelated statute concerning the nature and timing of the threat necessary to enhance the offense of criminal sexual assault.

¶ 17 Second, defendant argues the State did not prove that there were no conditions to mitigate any threat he posed. However, the State presented evidence and argument regarding the factors in section 110-5(a)(1)-(7), including the nature of the offense, the strength of the case, defendant's criminal history, his failure to appear in other cases, and that defendant had been on GPS monitoring as a condition of pretrial release but had cut his anklet and had a warrant outstanding for failure to appear. 725 ILCS 5/110-5(a)(1)-(7) (West 2022). Considering these facts, the court observed that defendant had not followed the pretrial conditions placed on him, and found that he would not comply with any further conditions of the court. See *People v. Bueno,* 2024 IL App (2d) 240053, ¶ 13 ("pretrial release is generally presumed, but only on certain conditions, including that 'the defendant *** *complies* with all terms of pretrial release' ") (emphasis added) (citing 725 ILCS 5/110-2(a)) (West 2022)). "[I]t is clear that the court is tasked with considering not just whether conditions short of detention exist, but also whether a defendant is likely to *comply* with them." (Emphasis in original.) *Id.* Based on the evidence and argument presented, it was not against the manifest weight of the evidence for the court to determine that defendant was unlikely to comply with any conditions of pretrial release. Accordingly, the court did not abuse its discretion in granting the State's petition.

7

¶ 18                                III. CONCLUSION

¶ 19        The judgment of the circuit court of Du Page County is affirmed.

¶ 20        Affirmed.