**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240057-U

Order filed April 24, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0057 Circuit No. 22-CF-977 |
| JAMES L. FAINT, | ) ) ) | Honorable Vincent F. Cornelius, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Presiding Justice McDade dissented.

_____

**ORDER**

¶ 1     *Held*:   The trial court did not abuse its discretion in granting the State's petition to deny pretrial release.

¶ 2     Defendant, James L. Faint, appeals the trial court's decision to deny him pretrial release. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4       Defendant, James L. Faint, was indicted on July 14, 2022, with unlawful possession of a weapon by a felon (Class 3) (720 ILCS 5/24-1.1(a), (e) (West 2022)), two counts of aggravated unlawful use of a weapon (Class 4) (*id.* § 24-1.6), and aggravated fleeing or attempting to elude a peace officer (Class 4) (625 ILCS 5/11-204.1(a)(1), (b) (West 2022)). Defendant's bail was set at $100,000, but he remained in custody. On January 9, 2024, defendant filed a *pro se* petition seeking pretrial release. In response, the State filed a verified petition to deny pretrial release, alleging defendant was charged with a nonprobationable felony, and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(1) (West 2022)).

¶ 5       The factual basis provided that on May 8, 2022, officers observed a vehicle traveling at a speed of 65 miles per hour in a 35 mile per hour speed zone. Defendant was driving the vehicle. The officers initiated their lights and sirens, and defendant turned and disobeyed a stop sign. Officers continued to pursue defendant. The officer was driving at a speed of 76 miles per hour to try to catch defendant, but defendant continued to pull away. The officers lost sight of defendant, and the pursuit terminated.

¶ 6       Police received dispatch that a citizen observed a woman run past his house. The woman was found in the backyard of a house where the residents did not know her. A firearm was recovered near the woman, and the homeowners confirmed the firearm was not theirs. An officer spoke to the woman, who told officers she was in the car defendant was driving. Defendant gave her the weapon and told her to take it when they left the vehicle. The vehicle was found, and officers located defendant's identification and cellphone inside. A search warrant was executed on defendant's cellphone, which uncovered multiple "selfie" videos from before the pursuit where defendant was seen holding the firearm recovered. Officers were able to confirm it was the same

2

firearm as it was unique and had an extended magazine. Defendant was a felon and did not have a valid firearm owner's identification (FOID) card. At the time of the offense, defendant was on bond in another case. Defendant had a prior criminal history which included a 2019 conviction for theft.

¶ 7　　　　A hearing was held on January 11, 2024, on this case and defendant's other pending case. The State provided the factual basis and argued defendant was a felon, was on bond, and was not supposed to have guns. The State indicated defendant posed a threat to the community by his possession of the firearms and stated,

> "I don't think he would obey any lawful orders of the Court, because he has been given a chance to be put on bond to obey certain conditions of bond. But even more so, he was convicted and was given rules that he was supposed to follow, and he doesn't follow those, allegedly, for three separate occasions."

The State further said,

> "I believe [defendant] has been given a couple chances to be able to show the Court that he is able to follow conditions of bond, conditions of convictions, and he has not shown the Court that he would be able to do that. And I think that goes greatly to the fact that there could be no condition or combination of conditions that would be able to prevent [defendant] from being a risk to the community."

Defendant argued he was not a threat and stated that "there was no harm done." Defendant also argued there was insufficient evidence that he committed the offenses. Defendant stated that he would comply with any conditions of pretrial release and indicated he had a family to care for. While defendant said he had never failed to appear, the State indicated he did have failures to appear in a previous case.

¶ 8 The court granted the petition, finding the State met its burden by clear and convincing evidence. In doing so, the court stated defendant had three pending cases, all of which were "unlawful use of weapons by a felon" cases, and in all three defendant was on some sort of release, whether parole or bond. The court further noted defendant was known to possess weapons. The court said,

> "The Court further finds that, given three consecutive possessions of firearm in a short window of time while in vehicles and while on parole and/or bond, *** there's nothing that this Court can think of *** that would mitigate your ability to do that. I don't think an electronic home monitor *** restricts your ability to possess firearms. I don't think home detention would restrict your ability to possess firearms."

¶ 9                                II. ANALYSIS

¶ 10 On appeal, defendant argues the court abused its discretion in granting the State's petition "where the State failed to clearly and convincingly prove that [defendant] poses a real and present safety threat that no conditions could mitigate." We consider factual findings for the manifest weight of the evidence, but the ultimate decision to grant or deny the State's petition to detain is considered for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see also *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 11 Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that

4

defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(a), (e). Sections 110-5(a) and 110-6.1(g) set forth factors for the court to consider when determining dangerousness and any conditions. *Id.* §§ 110-5(a), 110-6.1(g).

¶ 12 We cannot say the court abused its discretion in granting the State's petition. Defendant continued to possess firearms, though he was a felon and on bond. He also led officers in a high-speed chase, thus showing that he was dangerous. Moreover, the State presented evidence and argument regarding the factors in section 110-5(a), including the nature and circumstance of the offense. *Id.* The State argued defendant had been on bond and was a felon, did not follow the conditions placed on him then, and would not comply with any further conditions of the court. The court further found no conditions would prevent defendant from possessing firearms. Based on the evidence and argument presented, it was not against the manifest weight of the evidence for the court to determine the defendant was thus unlikely to comply with any conditions of pretrial release. Therefore, the court did not abuse its discretion in granting the State's petition.

¶ 13                                III. CONCLUSION

¶ 14 We affirm the judgment of the circuit court of Will County.

¶ 15 Affirmed.

¶ 16 PRESIDING JUSTICE McDADE, dissenting:

¶ 17 The majority has affirmed the circuit court's decision to grant the State's petition to deny Faint pretrial release. I would hold that the State failed to meet its burden of proof under section 110-6.1(e)(3) and that Faint would necessarily have to be admitted to pretrial release despite the nature of his alleged crimes. Thus, I dissent.

5

¶ 18    In full, section 110-6.1(e) states:

"(e) Eligibility: All defendants shall be presumed eligible for pretrial release, and the State shall bear the burden of proving by clear and convincing evidence that:

(1) the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a), and

(2) for offenses listed in paragraphs (1) through (7) of subsection (a), the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, by conduct which may include, but is not limited to, a forcible felony, the obstruction of justice, intimidation, injury, or abuse as defined by paragraph (1) of Section 103 of the Illinois Domestic Violence Act of 1986, and

(3) no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, for offenses listed in paragraphs (1) through (7) of subsection (a), or (ii) the defendant's willful flight for offenses listed in paragraph (8) of subsection (a), and

(4) for offenses under subsection (b) of Section 407 of the Illinois Controlled Substances Act that are subject to paragraph (1) of subsection (a), no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the

6

case, and the defendant poses a serious risk to not appear in court as required."

725 ILCS 5/110-6.1(e) (West 2022).

While not every subsection of section 110-6.1(e) may be applicable in any given case, the statute is abundantly clear that the burden of proving that a defendant should be detained, rather than released, lies with the State.

¶ 19 "Burden of proof" contains two concepts: a burden of production and a burden of persuasion. Black's Law Dictionary 196 (6th ed. 1990). The burden of production is "[t]he obligation of a party to introduce evidence sufficient to avoid a ruling against him on the issue." *Id.* The burden of persuasion is "[t]he onus on the party with the burden of proof to convince the trier of fact of all elements of his case." *Id.* In pretrial-release cases, then, when the State opposes release and seeks detention, it would seem elementary that for the State to meet its legislatively mandated burden under section 110-6.1(e)(3), it would at a minimum produce evidence and present argument related to the conditions listed in section 110-10(b) because that section is explicitly referenced by section 110-6.1(e)(3). 725 ILCS 5/110-6.1(e)(3) (West 2022); see *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 15-19. Of course, not every conceivable condition of pretrial release would need to be addressed by the State to meet its burden under section 110-6.1(e)(3). But the language of that section shows that the legislature contemplated what conditions would arguably be applicable and mandated that the State produce evidence and present argument on them.

¶ 20 If the State fails to meet its burden of proof—namely, its burdens of production and persuasion—under section 110-6.1(e), the presumption that the defendant is eligible for release stands and the defendant cannot be detained. See 725 ILCS 5/110-6.1(e) (West 2022). If, on the other hand, the State satisfies its burden, the presumption vanishes. However, detention in that

7

situation is not automatic, as the ultimate decision of whether a defendant will be released or detained has now passed squarely into the discretionary power of the circuit court. See, *e.g.*, *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13 (holding that "[w]e review for an abuse of discretion the trial court's ultimate determination regarding pretrial release").

¶ 21 In this case, the State's petition to deny pretrial release was based on sections 110-6.1(a)(1), (6), and (8). Regarding subsections (a)(1) and (a)(6), the State was therefore required to prove by clear and convincing evidence, in relevant part, that (1) "the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a)" (725 ILCS 5/110-6.1(e)(1) (West 2022)); (2) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(2)); and (3) "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(3)).

¶ 22 At the hearing in this case, the State presented evidence of the circumstances surrounding the incident leading to the charges that were filed against Faint. The State emphasized that Faint was out on bond at the time he committed the alleged offenses and that one condition of his bond was a prohibition on possessing firearms. Because Faint violated that condition, the State continued, he was not likely to abide by any conditions such that no conditions could mitigate the safety risk he posed.

¶ 23 As I stated above, I believe that to meet its burden of proof under section 110-6.1(e)(3), the State ought to address, at a minimum, the conditions explicitly listed in section 110-10(b). *Supra* ¶ 19. Here, while the State did address one of those conditions—a prohibition on possessing firearms (*id.* § 110-10(b)(2))—it was an unsubstantiated leap for the State to conclude that the

failure of Faint to abide by one condition meant that he would not follow *any* conditions and that no conditions therefore could mitigate the safety threat he posed. The State cannot meet its burden of proof under section 110-6.1(e)(3) by addressing only one of the conditions listed in section 110-10(b), and it certainly cannot persuasively conclude, without more, that the failure to abide by one condition means Faint would not abide by any conditions. Accordingly, under these circumstances, I would hold that the State failed to meet its burden of proof under section 110-6.1(e)(3) regarding its claims that subsections 110-6.1(a)(1) and (6) compelled his detention.

¶ 24    In this regard, I would note that there has been a tendency of late by my colleagues on this court to issue decisions in pretrial-release cases that claim the State can meet its burden of proof under section 110-6.1(e) by producing evidence related to the factors the circuit court is statutorily mandated to consider under section 110-5 when considering what conditions should attach to a defendant's pretrial release. See, *e.g.*, *People v. Mikolaitis*, 2024 IL App (3d) 230791, ¶¶ 9-11; *People v. Salazar*, 2024 IL App (3d) 240066-U, ¶¶ 14-15, 17; *People v. Grant*, 2024 IL App (3d) 230623-U, ¶¶ 7-8. These decisions reflect a profound misinterpretation of the pretrial-release statutory scheme.

¶ 25    Section 110-5, which contains a nonexhaustive list of factors the circuit court is required to consider *when imposing conditions of pretrial release* (725 ILCS 5/110-5 (West 2022)), is not referenced at all in section 110-6.1(e) (*id.* § 110-6.1(e)). The reason for this should be obvious. Section 110-5, which is titled "Determining the amount of bail and conditions of release," only applies *after* the court has received evidence and heard arguments on whether a defendant should be detained rather than released; *i.e.*, once the discretion of the court has been invoked. See *id.* § 110-5. Language used throughout section 110-5 confirms what ought to be obvious about when it applies. Subsection (a) provides factors for the circuit court to consider *when deciding what*

9

*conditions should apply, if any, to pretrial release. Id.* § 110-5(a). Subsection (b) states that the court "may use a regularly validated risk assessment tool *to aid its determination of appropriate conditions of release.*" (Emphasis added.) *Id.* § 110-5(b). Subsection (c) requires the court to impose conditions that are mandatory under section 110-10(a). *Id.* § 110-5(c). Other examples exist in the statute as well, but more are unnecessary. It is abundantly clear that section 110-5 plays no part in the determination of whether the State has met its burden of proof under section 110-6.1(e).

¶ 26      Section 110-5 has been misused with increasing frequency by my colleagues on this court to infer that the State can meet its burden of proof under section 110-6.1(e) by presenting evidence that would be related to factors the circuit court must consider under section 110-5 when making an entirely separate determination. See, *e.g.*, *Mikolaitis*, 2024 IL App (3d) 230791, ¶¶ 9-11; *Salazar*, 2024 IL App (3d) 240066-U, ¶¶ 14-15, 17; *Grant*, 2024 IL App (3d) 230623-U, ¶¶ 7-8. This case is no different. The majority in this case presents a misleading, overly generalized summary of what section 110-6.1(e) requires and then immediately refers to section 110-5, as if that section has something to do with the section 110-6.1(e) determination. *Supra* ¶ 11. In the next paragraph, when it analyzes whether the circuit court erred in granting the State's petition to detain, the majority then explicitly uses section 110-5 as support for its decision: "the State presented evidence and argument regarding the factors in section 110-5(a), including the nature and circumstance of the offense." *Supra* ¶ 12. The majority's use of section 110-5 in this manner is manifestly incorrect under the law and underscores the erroneous nature of the majority's decision.

¶ 27      I note that while the State also sought detention pursuant to section 110-6.1(a)(8), the circuit court explicitly stated that it was not making any finding under the willful-flight standard. Thus, the section 110-6.1(a)(8) allegation cannot serve as a basis for detaining Faint in this case.

¶ 28　　　　　In sum, because the State failed to meet its burden of proof under section 110-6.1(e)(3), the statutory presumption in favor of release was not rebutted. Thus, Faint should have been released.

¶ 29　　　　　For the foregoing reasons, I dissent.