2024 IL App (3d) 240046

Opinion filed April 29, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| THE PEOPLE OF THE STATE OF | ) | Appeal from the Circuit Court |
|---|---|---|
| ILLINOIS, | ) | of the 12th Judicial Circuit, |
| | ) | Will County, Illinois, |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-24-0046 |
| v. | ) | Circuit No. 21-CF-1219 |
| | ) | |
| CHARLES D. YOUNG, JR., | ) | Honorable |
| | ) | John Connor, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Presiding Justice McDade dissented, with opinion.

**OPINION**

¶ 1 Defendant, Charles D. Young, Jr., appeals from the Will County circuit court's order denying him pretrial release. For the following reasons, we affirm.

¶ 2 I. BACKGROUND

¶ 3 Defendant was indicted on September 16, 2021, with aggravated battery (Class X) (720 ILCS 5/12-3.05(e)(1), (h) (West 2020)), three counts of armed robbery (Class X) (*id.* § 18-2(a)(4), (a)(2), (b)), and unlawful possession of a weapon by a felon (Class 3) (*id.* § 24-1.1(a), (e)). Defendant's bail was set at $500,000, but he remained in custody. On January 16, 2024,

defendant filed a motion seeking pretrial release. In response, the State filed a verified petition to deny pretrial release, alleging defendant was charged with a forcible felony, and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1.5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(1.5) (West 2022)).

¶ 4        The factual basis provided that on August 19, 2021, Cedric Battle and defendant exchanged text messages setting up a transaction wherein Battle and Darnell Prince would purchase contraband from defendant. Battle and Prince met up with defendant and co-defendant Bryan Dantzler, who arrived together in a Ford Explorer. Battle and Prince entered the rear of the Explorer. Dantzler was identified as the driver of the Explorer, and defendant was identified as the passenger. After Battle and Prince paid for the contraband, Dantzler and defendant displayed handguns and demanded the victims' property. Battle and Prince complied. Defendant struck Battle and Prince with his firearm, and they were ordered to exit the vehicle. As Prince exited the vehicle, defendant shot him, striking him in the abdomen. Dantzler and defendant fled the scene. Prince had severe internal damage, was in critical condition, and required surgery. Officers obtained Dantzler and defendant's cellphone records, which revealed them traveling to and from the location of the incident. In the hours following the incident, defendant sent text messages about the crime, which included a video from a local news station about the shooting. Defendant made a statement in a text before the offense that he was going to commit a robbery and shortly thereafter to the same person that he got $3,000 and two guns. Defendant also made statements in text messages to various individuals wherein he admitted he "popped" someone and got cannabis, guns, and money and "bragging that the victims couldn't say anything 'or they tell on they self,' and that because he took the victims firearms, that probably hurt 'worse than the shot.'

2

" When defendant was arrested, officers obtained a search warrant. Pursuant to the warrant, multiple firearms were recovered. While in custody, defendant was recorded asking if the police "got all the pipes," referring to the confiscated firearms.

¶ 5　　　　The petition further indicated that defendant had a conviction for attempted armed robbery. When he was on mandatory supervised release (MSR) he committed another offense, and his MSR was revoked. He was arrested for aggravated assault to a peace officer. Additionally, he was affiliated with the Black Gangster Disciples street gang.

¶ 6　　　　A hearing was held on January 18, 2024. The State provided the factual basis as set forth above. The State stated, "I think that combination of factors shows that he does not appreciate the seriousness of the offenses he's charged with and will likely re-offend." Defendant argued that electronic monitoring would be a sufficient condition. The court granted the petition, finding that the State met its burden by clear and convincing evidence. In doing so, the court went through the statutory factors it was considering. The court said that there were no conditions "including GPS" that would mitigate the threat defendant posed.

¶ 7　　　　　　　　　　　　　　II. ANALYSIS

¶ 8　　　　On appeal, defendant argues that the court abused its discretion in granting the State's petition as the State failed to prove that no conditions could mitigate any threat he posed. We consider factual findings for the manifest weight of the evidence, but the ultimate decision to grant or deny the State's petition to detain is considered for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see also *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 9　　　　Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must first file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(a), (e). Sections 110-5(a) and 110-6.1(g) set forth factors for the court to consider when determining dangerousness and any conditions. *Id.* §§ 110-5(a), 110-6.1(g).

¶ 10　　　　Here, we cannot say that the court abused its discretion in granting the State's petition. The State presented evidence and argument regarding the factors in section 110-5(a), including the nature and circumstance of the offense. *Id.* In the petition, the State indicated that defendant had attempted to commit this offense before and that he had violated his MSR by committing another offense. The court further found that no conditions, including GPS monitoring, would mitigate the threat defendant posed. Based on the evidence and argument presented, it was not against the manifest weight of the evidence for the court to determine that the defendant was thus unlikely to comply with any conditions of pretrial release. Therefore, the court did not abuse its discretion in granting the State's petition.

¶ 11　　　　　　　　　　　　　III. CONCLUSION

¶ 12　　　　The judgment of the circuit court of Will County is affirmed.

¶ 13　　　　Affirmed.

¶ 14　　　　PRESIDING JUSTICE McDADE, dissenting:

4

¶ 15    The majority has affirmed the circuit court's decision to grant the State's petition to deny Young pretrial release. I would hold that the State failed to meet its burden of proof under section 110-6.1(e)(3) and that Young would necessarily have to be admitted to pretrial release despite the nature of his alleged crimes. Thus, I dissent.

¶ 16    In full, section 110-6.1(e) states:

"(e) Eligibility: All defendants shall be presumed eligible for pretrial release, and the State shall bear the burden of proving by clear and convincing evidence that:

(1) the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a), and

(2) for offenses listed in paragraphs (1) through (7) of subsection (a), the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, by conduct which may include, but is not limited to, a forcible felony, the obstruction of justice, intimidation, injury, or abuse as defined by paragraph (1) of Section 103 of the Illinois Domestic Violence Act of 1986, and

(3) no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, for offenses listed in paragraphs (1) through (7) of subsection (a), or (ii) the defendant's willful flight for offenses listed in paragraph (8) of subsection (a), and

5

(4) for offenses under subsection (b) of Section 407 of the Illinois Controlled Substances Act that are subject to paragraph (1) of subsection (a), no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and the defendant poses a serious risk to not appear in court as required." 725 ILCS 5/110-6.1(e) (West 2022).

While not every subsection may be applicable in any given case, the statute is abundantly clear that the burden of proving that a defendant should be detained, rather than released, lies with the State.

¶ 17 "Burden of proof" contains two concepts: a burden of production and a burden of persuasion. Black's Law Dictionary 196 (6th ed. 1990). The burden of production is "[t]he obligation of a party to introduce evidence sufficient to avoid a ruling against him on the issue." *Id*. The burden of persuasion is "[t]he onus on the party with the burden of proof to convince the trier of fact of all elements of his case." *Id.* In pretrial-release cases, then, when the State opposes release and seeks detention, it would seem elementary that for the State to meet its legislatively mandated burden under section 110-6.1(e)(3), it would at a minimum produce evidence and present argument related to the conditions listed in section 110-10(b) because that section is explicitly referenced by section 110-6.1(e)(3). 725 ILCS 5/110-6.1(e)(3) (West 2022); see *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 15-19. Of course, not every conceivable condition of pretrial release would need to be addressed by the State to meet its burden under section 110-6.1(e)(3). But the language of that section shows that the legislature contemplated what conditions

6

would arguably be applicable and mandated that the State produce evidence and present argument on them.

¶ 18        If the State fails to meet its burden of proof—namely, its burdens of production and persuasion—under section 110-6.1(e), the presumption that the defendant is eligible for release stands and the defendant cannot be detained. See *id.* § 110-6.1(e). If, on the other hand, the State satisfies its burden, the presumption vanishes. However, detention in that situation is not automatic, as the ultimate decision of whether a defendant will be released or detained has now passed squarely into the discretionary power of the circuit court. See, *e.g.*, *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13 (holding that "[w]e review for an abuse of discretion the trial court's ultimate determination regarding pretrial release").

¶ 19        In this case, the State's petition to deny pretrial release was based on sections 110-6.1(a)(1.5) and (6). Accordingly, at the hearing on the petition, the State was required to prove by clear and convincing evidence, in relevant part, that (1) "the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a)" (*id.* § 110-6.1(e)(1)); (2) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(2)); and (3) "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(3)).

¶ 20        At the hearing in this case, the State presented evidence of the circumstances surrounding the incident leading to the charges that were filed against Young. At no point in the State's presentation did it address the third element it was required to prove pursuant to section 110-6.1(e)(3). The State never discussed whether any of the conditions set forth in section 110-10(b)

7

could mitigate the safety threat Young posed and in fact never even uttered the word "condition." Thus, it cannot reasonably be concluded that the State met its burden of proof under section 110-6.1(e)(3) in this case, and the presumption compels his release. *Id.* § 110-6.1(e).

¶ 21    By affirming the circuit court's decision to deny pretrial release in this case, the majority has excused the State from having to meet its legislatively mandated burden of proving by clear and convincing evidence that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(3). I simply cannot agree with any decision that so obviously undermines the legislature's mandate in article 110 of the Act (725 ILCS 5/art. 110 (West 2022).

¶ 22    Unfortunately, the State's approach in this case is emblematic of its general approach to pretrial-release cases. A staggering number of cases have come before this court on appeal in which the State either said nothing about conditions (like this case) or simply stated in a conclusory fashion, *i.e.*, with no specificity whatsoever pursuant to section 110-10(b) or otherwise, that no condition or combination of conditions could mitigate the defendant's safety threat or risk of willful flight (see, *e.g.*, *Stock*, 2023 IL App (1st) 231753, ¶¶ 15-19). Neither of those scenarios is adequate to satisfy the State's burden under section 110-6.1(e)(3). It is not self-evident merely because (1) a crime—even a heinous crime—has likely been committed and (2) if applicable, the defendant poses a safety threat as defined by statute, that no condition or combination of conditions exist that could mitigate the defendant's safety threat if admitted to pretrial release. *Id.* ¶ 18. Nevertheless, the State has largely treated pretrial-release cases this way and, largely, this court has sanctioned the State's improper approach.

¶ 23　　　　In this regard, I would note that there has been a tendency of late by my colleagues on this court to issue decisions in pretrial-release cases that claim the State can meet its burden of proof under section 110-6.1(e) by producing evidence related to the factors the circuit court is statutorily mandated to consider under section 110-5 when considering what conditions should attach to a defendant's pretrial release. See, *e.g.*, *People v. Mikolaitis*, 2024 IL App (3d) 230791, ¶¶ 9-11; *People v. Salazar*, 2024 IL App (3d) 240066-U, ¶¶ 14-15, 17; *People v. Grant*, 2024 IL App (3d) 230623-U, ¶¶ 7-8. These decisions reflect a profound misinterpretation of the pretrial-release statutory scheme.

¶ 24　　　　Section 110-5, which contains a nonexhaustive list of factors the circuit court is required to consider *when imposing conditions of pretrial release*, is not referenced at all in section 110-6.1(e). *Id.* The reason for this should be obvious. Section 110-5, which is titled "Determining the amount of bail and conditions of release," only applies *after* the court has received evidence and heard arguments on whether a defendant should be detained rather than released; *i.e.*, once the discretion of the court has been invoked. See *id.* § 110-5. Language used throughout section 110-5 confirms what ought to be obvious about when it applies. Subsection (a) provides factors for the circuit court to consider *when deciding what conditions should apply, if any, to pretrial release*. *Id.* § 110-5(a). Subsection (b) states that the court "may use a regularly validated risk assessment tool *to aid its determination of appropriate conditions of release*." (Emphasis added.) *Id.* § 110-5(b). Subsection (c) requires the court to impose conditions that are mandatory under section 110-10(a). *Id.* § 110-5(c). Other examples exist in the statute as well, but more are unnecessary. It is abundantly clear that section 110-5 plays no part in the determination of whether the State has met its burden of proof under section 110-6.1(e).

¶ 25 Section 110-5 has been misused with increasing frequency by my colleagues on this court to infer that the State can meet its burden of proof under section 110-6.1(e) by presenting evidence that would be related to factors the circuit court must consider under section 110-5 when making an entirely separate determination. See, *e.g.*, *Mikolaitis*, 2024 IL App (3d) 230791, ¶¶ 9-11; *Salazar*, 2024 IL App (3d) 240066-U, ¶¶ 14-15, 17; *Grant*, 2024 IL App (3d) 230623-U, ¶¶ 7-8. This case is no different. The majority in this case presents a misleading, overly generalized summary of what section 110-6.1(e) requires and then immediately refers to section 110-5, as if that section has something to do with the section 110-6.1(e) determination. *Supra* ¶ 10. In the next paragraph, when it analyzes whether the circuit court erred in granting the State's petition to detain, the majority then explicitly uses section 110-5 as support for its decision: "[t]he State presented evidence and argument regarding the factors in section 110-5(a), including the nature and circumstance of the offense." *Supra* ¶ 11. The majority's use of section 110-5 in this manner is manifestly incorrect under the law and underscores the erroneous nature of the majority's decision.

¶ 26 For the foregoing reasons, I dissent.