2024 IL App (2d) 240059-U
No. 2-24-0059
Order filed April 12, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-109 |
| JEREMY L. BRANNON, | ) ) | Honorable Salvatore LoPiccolo Jr. |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Clear and convincing evidence established that defendant's charges were detainable, defendant's release posed a threat to the community, and no conditions existed to mitigate such a threat if defendant were released.

¶ 2    Defendant, Jeremy L. Brannon, timely appeals the circuit court's order of pretrial detention pursuant to Public Acts 101-562 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] For the reasons below, we affirm.

---

[1]The Act has also been referred to as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or the Pretrial Fairness Act. However, none of these names appear within the Illinois

¶ 3                                     I. BACKGROUND

¶ 4      On January 19, 2024, the State charged defendant with four counts of aggravated fleeing a police officer (625 ILCS 5/11-204.1(a)(1), (3), (4) (West 2022)), one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2022)), and two counts of resisting or obstructing a police officer (720 ILCS 5/1.22 (West 2022)). On that same day, the State filed its verified petition to detain pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). The State alleged under section 110-6.1(a)(1.5) of the Code that "defendant [was] charged with a forcible felony offense *** or any other felony which involves the threat of an infliction of great bodily harm or permanent disability or disfigurement and [that] *** defendant's pretrial release pose[d] a real and present threat to the safety of any person or persons in the community." Furthermore, as an alternative basis for detention, the State argued that defendant had "a high likelihood of willful flight to avoid prosecution."

¶ 5      Also on January 19, 2024, the court held a hearing on the State's petition. During the hearing, the State submitted a police synopsis into evidence, which described defendant's arrest. The police synopsis described how, on January 17, 2024, defendant's car was spotted by police officers who noticed the vehicle "appeared to have an illegal amount of tint applied to the front and rear windows." The officers ran the car's plates and quickly determined that it belonged to defendant, who "had a revoked license at this time and felony traffic warrants out of DuPage County and Kendall County." As police activated their emergency lights to attempt to stop defendant's vehicle, defendant pulled into a gas station, drove through a red light, and sped away from police officers at 60 miles per hour, despite the fact that the local speed limit was 30 miles per hour. Defendant then drove past a stop sign without stopping, struck another vehicle, and drove

_____

Compiled Statutes or public acts.

through a church parking lot, where he struck a crossing guard booth, disabling his car. Defendant exited the car and fled on foot before he was finally apprehended after a struggle. Defendant admitted to officers that he "had 'some drugs.'" Officers found 1.2 grams of cocaine on defendant's person. Meanwhile, the driver of the vehicle defendant struck "complained of shoulder pain but declined medical attention."

¶ 6    The State described defendant's criminal history:

"MS. [BECHTOLD][2] [(ASSISTANT STATE'S ATTORNEY)]: Judge, in terms of proffer regarding *** defendant's criminal history, it *** includes a 1994 burglary out of DuPage County in which the defendant received four years in the Illinois Department of Corrections; a 1994 case out of Kane County which *** defendant ultimately pled to an aggravated discharge, a Class 1 felony, and was sentenced to seven years in the Illinois Department of Corrections; a 1999 case out of Kane County of a felon in possession of a weapon, a Class 3 felony, [for] which he received 24 months, a Department of Corrections sentence; a 2000-CF-2291 Kane County case of a reckless homicide, a Class 2 felony, the defendant was sentenced to 13 years in the Illinois Department of Corrections; a 14-CF-1917, Kane County case, resisting a peace officer resulting in injury, a Class 4. He did receive 24 months of probation. And a 2016-CF-17 that was a Kendall County case which it was manufacturing and delivery of a controlled substance, a Class 1 felony which he received 24 months of probation in April of 2018.

His driver's license has been revoked since January 21st of 2005 as a result of the conviction in that reckless homicide case from Kane County. He currently has pending 20-

---

[2]The transcript from the January 19, 2024, hearing incorrectly lists defense counsel as providing the proffer of defendant's criminal history.

CF-315. It is a Class 4 driving on revoked, the basis being the reckless homicide revocation that is out of Kendall County. He also has a 20-TR-3217. But my review of their charging, it appears it was on one date. So I believe that's just the offense.

DuPage County case 21-CF-83, a Class 4 driving on revoked. Again, the basis being the revocation is a reckless homicide. The date of offense in that was September—I'm sorry—July 30th of 2020, and those have remained on warrant status."

¶ 7 Following its proffer, the State argued that, given "the threat of or infliction of great bodily harm or permanent disability or disfigurement," defendant's charged offenses—while not "specifically listed in the statute"—were detainable under the Act. The State reiterated that, prior to being arrested, defendant had fled from police "going at least 60 miles an hour in a 30 mile per hour zone," disobeyed both a red light and a stop sign, and "T-boned another vehicle," all before crashing into a crossing guard booth in a church parking lot. Although the driver defendant had crashed into "declined *** medical assistance," the State contended that defendant's charges constituted detainable offenses, because the relevant inquiry was not whether defendant's actions *actually* injured another, but whether his actions caused "a threat [of] infliction of great bodily harm or permanent disability." The State alternatively argued that defendant was a flight risk, contending that his attempt to evade the police indicated he would similarly attempt to circumvent prosecution unless he were detained.

¶ 8 Concerning whether any conditions could mitigate the real and present threat defendant's release may entail, the State argued that, given defendant's "extensive criminal history," he has shown "his unwillingness to *** follow any rules."

¶ 9 In return, defendant first argued that "a sworn synopsis by itself is—does not create a presumption that [defendant] committed the alleged acts." Defendant then pointed out numerous injuries he was presently suffering from as a result of the chase, describing that "his right arm

[was] in a sling," "he ha[d] gauze and tape around his left arm," and "walked with a limp." Defendant also purportedly suffered a seizure after being arrested, requiring him to be "taken to the hospital," where he was diagnosed as having "exceedingly high blood pressure to the point where the nurse did not want to discharge him." Furthermore, defendant had "one or two broken ribs," a broken elbow, "screws in his left ankle," a "reconstructed ACL in his right knee," and arthritis.

¶ 10    Defendant also described how he routinely cared for his 72-year-old mother, and that he had many family members in the area, including his daughter and granddaughters. He was currently employed as a sous chef in a local restaurant.

¶ 11    Defendant disputed that his charges involved "the use or threat of physical force or violence against any individual." As support, defendant called attention to the fact that the State had not charged him with causing any type of bodily injury to any individual. Furthermore, pursuant to the police synopsis, "there was no medical attention that was given to the *** driver of the vehicle that was struck." Given defendant's injuries and numerous family members who lived in the immediate area, defendant also argued that there was no threat that defendant would flee to avoid prosecution if he were to be released. Indeed, according to defendant's public safety assessment report, he had "zero failures to appear within the past two years."

¶ 12    Defendant next argued that several conditions existed that could "mitigate any threat to the public" that his release may cause. "Those conditions," according to defendant, "[could] include things like not driving without a valid driver's license" or electronic home monitoring. Specifically pertaining to defendant's drug charges, defendant also suggested that he be ordered "not to possess or consume any intoxicating substances."

¶ 13    Ultimately, the court found by clear and convincing evidence that the proof was evident and the presumption great that defendant committed the charged offenses. Citing *People v.*

*Rodriguez*, 2023 IL App (3d) 230450, the court next found by clear and convincing evidence that the presumption was great that defendant committed a detainable offense. 725 ILCS 5/110-6.1(a)(1.5) (West 2022). Similarly, the court found that "the State has proven by clear and convincing evidence[] that the proof is evident and the presumption is great that *** defendant pose[d] a real and present threat to the safety of the community," and, given the fact that defendant continued to drive despite his license being revoked many years earlier, that no conditions could mitigate such a threat. For these reasons, the trial court granted the State's petition "in regards to [their first basis for relief,] dangerousness." Concerning the State's alternative basis for detention, that defendant posed a great risk of willful flight if he were to be released, the court found by clear and convincing evidence that "defendant has a high likelihood of willful flight to avoid prosecution in this case," based on his "driving away from *** officers instead of pulling over" and ultimately fleeing on foot once his car was disabled.

¶ 14    Defendant timely appeals under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023).

¶ 15                                    II. ANALYSIS

¶ 16    The Code presumes that all criminal defendants are eligible for pretrial release prior to conviction. 725 ILCS 5/110-6.1(e) (West 2022). In order to establish that a defendant should be detained prior to a conviction, the State may prove, by clear and convincing evidence, that: (1) the defendant has committed a qualifying offense; (2) the defendant poses a "real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case;" and (3) that "no condition or combination of conditions *** may mitigate *** the real and present threat[: (a)] to the safety of any person or persons or the community, based on the specific articulable facts of the case[;" or (b)] "the defendant's willful flight." 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022).

¶ 17    In reviewing whether a trial court erred in detaining a defendant under the Act, our standard of review is two-fold. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. We review the trial court's factual findings under the manifest-weight-of-the-evidence standard, while reviewing the court's "ultimate determination regarding pretrial release" for an abuse of discretion. *Id.* Moreover, questions concerning purely statutory interpretation are reviewed *de novo*. *People v. Rios*, 2023 IL App (5th) 230724, ¶ 8.

¶ 18    Here, defendant raises four arguments on appeal: (1) that the trial court abused its discretion in finding that defendant's charges included a forcible felony under the Act, (2) that the trial court erred in finding that defendant's flight from police indicated that he would similarly flee from prosecution if released, (3) that the State failed to prove by clear and convincing evidence that defendant's pretrial release posed a threat, and (4) that the court erred in finding that no conditions existed that could mitigate defendant's threat to the public if he were to be released. Because the State has seemingly abandoned its arguments as to willful flight, we only address defendant's first, third, and fourth arguments.

¶ 19    First, we disagree with defendant's argument that the trial court abused its discretion when it found that defendant committed a forcible felony under the Act. Under section 5/110-6.1(a)(1.5) of the Code, a court may deny a defendant pretrial release where:

"the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and the defendant is charged with a forcible felony, which as used in this Section, means treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, armed robbery, aggravated robbery, robbery, burglary where there is use of force against another person, residential burglary, home invasion, vehicular invasion, aggravated arson, arson, aggravated

kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement *or any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement*." (Emphasis added.) 725 ILCS 5/110-6.5(a)(1.5) (West 2022).

¶ 20    For example, in *Rodriguez*, the appellate court found that the defendant's charge of resisting or obstructing a police officer qualified as a "forcible felony" under the Act. 2023 IL App (3d) 230450, ¶ 10. There, relying on the language of section 5/110-6.5(a)(1.5), the court first noted that the defendant's charge was a felony under the Code. *Id.* Additionally, defendant's felony charge involved a threat of or infliction of great bodily harm, permanent disability, or disfigurement, as the defendant had attempted to flee from police in his automobile while an officer's arm was lodged within his car window. *Id.* For those reasons, the court agreed with the State that defendant's felony charge involved a "threat of great bodily harm," as the "defendant contemplated the use of the force and was willing to use it," despite the fact that the officer was not seriously injured. *Id.*

¶ 21    Here, like the defendant in *Rodriguez*, defendant's flight from police plainly involved the threat of great bodily harm. Again, the record here shows that, as defendant fled from the police, his car reached speeds of 60 miles per hour—over double the legal speed limit—as he disobeyed various traffic control devices. It is only fortuity that defendant did not cause a serious injury, and, indeed, he himself argues that his flight so injured him that he could not flee from jurisdiction. Even if defendant were oblivious to the obvious threat he posed when driving over double the legal speed limit and ignoring traffic devices, once he crashed into another vehicle, he surely must have been aware of the inherent danger of his actions. Yet, when confronted with this obvious truth, he continued to flee officers, driving through a church parking lot and crashing again into a crossing

guard booth. Despite defendant's arguments to the contrary, we find that this conduct obviously exemplifies his contemplation and willingness to use force while fleeing from the police.[3]

¶ 22    Nonetheless, defendant argues that the State failed to present sufficient evidence concerning specific details of the police chase that were necessary to establish that defendant contemplated and was willing to use force while fleeing. For example, defendant argues that the State failed to show how fast defendant was traveling when he drove through the red light or when he crashed into the other vehicle. For this reason, defendant asserts that the State failed to show that defendant's actions carried the threat of great bodily harm. Again, we disagree. While the State did not present evidence of defendant's speed during each and every second of the police chase, defendant himself suggested that he suffered from serious injury as a result of the chase and collisions. Clearly, given the fact that defendant was greatly injured in the collisions his flight from

---

[3]Defendant cites *People v. Mosley*, 2023 IL App (1st) 200309, ¶¶ 35-36, to argue that a forcible felony under the Act must involve an offense that inherently involves a specific intent to carry out a violent act or where the particular facts of a case show that defendant had contemplated and was willing to use force to carry out an offense. We note that the *Mosley* court was not addressing any language in the Code regarding pretrial detention. Instead, the court analyzed section 5/2-8 of the Criminal Code of 2012, which contains language similar to, but not identical with, the provisions of the Code concerning pretrial release for forcible felonies. 720 ILCS 5/2-8 (West 2012) (forcible felonies include "any other felony which involves the use or threat of physical force or violence"); 725 ILCS 5/110-6.1(a)(1.5) (West 2022) (a forcible felony includes "any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement"). Accordingly, we do not find *Mosley* to be instructive under these circumstances.

police caused, his speed was obviously sufficient to cause great injury. Furthermore, the car defendant struck became disabled upon impact. Again, this suggests that defendant was driving at a considerable speed when the crash occurred.

¶ 23    Defendant also argues that the State failed to show how busy the area was during defendant's police chase and suggests that his actions were less dangerous because he fled from police at night rather than in the middle of the day. Once more, we disagree. We can infer that other drivers were present during the police chase, as defendant did in fact collide with another driver. While there is little doubt that more drivers or pedestrians may have been present had the chase taken place earlier in the day, defendant's actions were still obviously dangerous. Accordingly, the trial court did not err in finding that defendant's offenses were detainable forcible felonies under the Act.

¶ 24    Next, we disagree with defendant that the State failed to show by clear and convincing evidence that defendant's pretrial release posed a threat to any persons or the community. Again, here, in order for defendant to have been properly detained prior to trial, the State must have shown, among other things, that his release posed "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(a)(1.5) (West 2022). The State met this burden here. Defendant's extensive criminal history shows that he had previous convictions for reckless homicide—in which defendant crashed into a corrections officer's vehicle, killing him—and resisting a police officer resulting in injury. Taken in conjunction with the facts underlying defendant's instant charges, this history shows a pattern of blatant disregard for others' safety, especially while defendant is behind the wheel of an automobile.

¶ 25    Defendant suggests that, given his injuries and the fact that he is now without a car, his release is unlikely to result in any threat to the public. We disagree. First, despite his suggestions

to the contrary, the record suggests that defendant fled *on foot* after crashing his vehicle two times. This fact alone downplays the severity of defendant's injuries. Furthermore, the record shows that defendant was able to continue driving after at least one of the crashes that presumably caused his injuries. Furthermore, while defendant is now purportedly without a car, he has an extensive family network which may provide him with easy access to a vehicle. Even if this were not the case, it is not a speculative leap to infer that he will be able to borrow or obtain a vehicle through some means, as his history strongly suggests a strong willingness to continue driving, no matter what impediments he faced. Accordingly, the trial court's findings as to the threat defendant's release posed were not against the manifest weight of the evidence.

¶ 26    Finally, we reject defendant's arguments that the "court erroneously dismissed the possibility of conditions and the impact of GPS or [electronic home monitoring]." In determining which conditions of pretrial release, if any, would ensure the safety of any person or the community, a court should consider: (1) the nature and circumstances of the charged offense, (2) the weight of the incriminating evidence, (3) the defendant's history and characteristics, and (4) the seriousness of any threat the defendant poses to any person, persons, or the community. 725 ILCS 5/110-5(a) (West 2022). Once more, here, the record here affirmatively shows that, after defendant's license was revoked in 2005, defendant continued to drive for almost twenty years. Since then, he has accumulated at least two more felony charges for driving while his license was revoked, and he continued to drive while open warrants were out for his arrest. From these facts, it is clear that defendant has a long history of repeatedly and flagrantly disregarding any court-imposed restrictions on his driving. Given his problematic history, the court's finding that no conditions could mitigate the threat defendant's release posed was not against the manifest weight of the evidence.

¶ 27                                    III. CONCLUSION

¶ 28    For all of these reasons, we affirm the judgment of the circuit court of Kane County.

¶ 29    Affirmed.