2025 IL App (2d) 240747-U
No. 2-24-0747
Order filed March 12, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-2030 |
| ROBERT S. LORD, | ) ) ) | Honorable Bianca Camargo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court.
Justices McLaren and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in denying defendant pretrial release.

¶ 2    Defendant, Robert S. Lord, appeals from orders of the circuit court of Kane County (1) granting the State's verified petition to deny pretrial release and ordering him detained pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)) and (2) denying his subsequent motions for relief (Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024)). See Pub. Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will

refer to these public acts collectively as the "Acts").[1] On appeal, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that: (1) the proof is evident or the presumption great that he committed the charged detainable offense; (2) the offense qualified as detainable under the Acts; (3) he poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case; and (4) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On September 15, 2024, defendant was arrested and charged by complaint with one count of aggravated DUI (625 ILCS 5/11-501(a) (West 2022)), five counts of aggravated fleeing a police officer (625 ILCS 5/11-204.1(a)(1), (a)(3), (a)(4) (West 2022)), one count of criminal trespass to a residence (720 ILCS 5/19-4(a)(2) (West 2022)), one count of harassment (720 ILCS 5/26.5-3(a)(3) (West 2022)), two counts of resisting or obstructing a police officer (520 ILCS 5/1.22 (West 2022)), and one count of disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2022)).

¶ 5      On that same day, the State petitioned to deny defendant pretrial release, alleging, under section 110-6.1(a)(1.5) of the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2022)), that defendant was charged with a forcible felony offense or any other felony which involves the threat of an infliction of great bodily harm or permanent disability or disfigurement and that defendant's pretrial release posed a real and present threat to the safety of any person or persons in the community. In an attached addendum, the State listed defendant's criminal history, noting that defendant was on

_____

[1] Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

probation for aggravated DUI in De Kalb County case No. 22-CF-54 and was on supervision for obstructing a peace officer in Kane County case No. 23-CF-707. The addendum further provided that defendant was on pretrial release in Kane County case No. 22-CM-1199 for resisting a peace officer, in Kane County case No. 24-CM-962 for criminal damage to property, and in Kane County case No. 23-CM-1991 for disorderly conduct. Among numerous other offenses listed, defendant's extensive criminal history included multiple DUIs, multiple offenses for driving with a license that was suspended or revoked, and other crimes involving prison sentences.

¶ 6      Also on September 15, 2024, the matter proceeded to a hearing on the State's petition. The State first noted that defendant did not have a valid driver's license. Specifically, defendant's driver's license had been in a continuous revoked and suspended status since August 7, 2010. Further, the State submitted a police synopsis into evidence, which provides as follows. On September 15, 2024, at about 2:28 a.m., police responded to a call that defendant had forced his way into the home of Heather H. while she was sleeping and threw her off her mattress. Heather told police that defendant had banged on her front door and attempted to open her bedroom window earlier that night, at approximately 11:30 p.m. At approximately 2:25 a.m., she awoke to find defendant in her bedroom, yelling and pulling off her mattress topper and dragging it into the living room. Heather pulled out her phone and told defendant she was going to call the police, at which point defendant fled in his vehicle.

¶ 7      After defendant left the residence, police located his vehicle and pursued with lights and sirens activated. During the pursuit, one officer noted that defendant was driving approximately 80 miles per hour along a route with speed limits of 30 to 50 miles per hour. Further, defendant disobeyed two stop signs. An additional officer who joined the pursuit observed defendant strike, at a high speed, spike strips set up by a third officer. Despite the impact, which deflated his

vehicle's front tires and damaged the spike strips, defendant continued his flight and reached speeds of 75 miles per hour in a posted 35-mile-per-hour zone. Although defendant's vehicle eventually lost both front tires, which caused his speed to slow to approximately 30 to 45 miles per hour, defendant continued driving and was observed crossing into southbound lanes several times while travelling north. An officer observed approximately three civilian vehicles driving southbound while defendant was "continuing to weave in and out of the north and southbound lanes." Fearing that defendant would eventually "hit a civilian vehicle head on," an officer twice attempted to disable defendant's vehicle with his own patrol vehicle. Even after the patrol car struck defendant's rear driver side, defendant drove into a dirt parking lot and then back into oncoming traffic. Another officer attempted two Precision Immobilization Technique (PIT) maneuvers, which failed. That officer then passed and boxed in defendant's vehicle, and, as defendant attempted to go around the police vehicle, defendant struck the patrol car, drove into a homeowner's front yard, and came to a stop after hitting a tree stump. Upon arrest, defendant pulled his hands away from officers attempting to place him in handcuffs, and officers observed "a strong odor of alcoholic beverage emitting from his breath" and "[defendant's] eyes [, which] were glassy and bloodshot."

¶ 8    Following its proffer, the State argued that the charged offense of aggravated DUI was a detainable offense "because it is a felony that involves the threat of great bodily harm." The State emphasized defendant's prior DUIs, his current revoked license for a DUI offense, and the officers' observations of defendant's alcohol-laden breath, bloodshot and glassy eyes, and erratic driving. The combination of these factors, the State maintained, provided clear and convincing evidence that defendant was "drunk" and thus "even more dangerous on the roads." In addition, the State argued that the aggravated fleeing and eluding offenses were detainable offenses, reiterating details

of defendant's flight from police in support of the "threat of great bodily harm." In particular, the State detailed defendant's high speed (in excess of 80 miles per hour), disregard of both police orders to stop, ignorance of at least three stop signs, and action of driving into oncoming traffic lanes. The State referenced the threat of great bodily harm to the individuals in the three civilian cars with which defendant could have collided while he was veering in and out of traffic, and to the police officers engaged in the pursuit. In support of its argument that the charged offenses were felonies that involved the threat of great bodily harm, the State cited *People v. Brannon*, 2024 IL App (2d) 240059-U, and *People v. Rodriguez*, 2024 IL App (3d) 230450. It explained that in both cases, despite not *causing* great bodily harm to others, the trial courts found that the defendants' behavior of fleeing from the police did result in a *threat* of great bodily harm and thus were detainable offenses. Similarly, the State argued that defendant's charges in the instant case also constituted detainable offenses because "there does not have to be a result of great bodily harm for the court to find that there is a threat of great bodily harm."

¶ 9    The State asked the court to consider defendant's criminal history in making a determination of dangerousness, referring the court to his "extremely long criminal history." The State referenced that defendant had multiple felony and forceable felony convictions as well as misdemeanor convictions of domestic battery, violating orders of protection, aggravated assault, and unlawful use of a weapon.

¶ 10    Further, the State argued that no conditions could mitigate the real and present threat posed by defendant's pretrial release. Specifically, it argued that defendant's criminal history demonstrated that he "does not have any regard for the laws of this state," and "This is what this defendant does over and over again. He disregards the laws. He disobeys the police." As an example, the State noted that defendant continued to drive despite having a suspended or revoked

license since 2010. It further referenced defendant's convictions of violating orders of protection. Additionally, at the time of the instant offense, defendant was on probation in De Kalb County, and "would have been told *** that he is not to commit any criminal offenses." Furthermore, the State added, defendant was on pretrial release in Kane County with court orders "that he was not to commit any new criminal offenses." The State noted that in Kane County case No. 24-CM-962, defendant was charged with criminal damage to property and that this case involved the same victim, Heather. As a condition of his pretrial release in case No. 24-CM-962, defendant was ordered to have no contact with Heather and to stay away from her residence. This condition of release was violated in committing the instant offenses. The State further argued that conditions such as placement of a Secure Continuous Remote Alcohol Monitoring (SCRAM) device[2] would be ineffective because it only "tells us he is drinking. It does not tell us if he is driving." Similarly, the State contended that Electronic Home Monitoring (EHM) would also "do absolutely nothing to prevent these crimes from occurring" as it would not indicate if defendant was driving.

¶ 11    In response, defendant argued that most charges in his criminal history were "remote" and "mainly non-violent," with the majority having been committed around 2003 and 2004.  Defendant questioned the State's evidence of the alleged aggravated driving under the influence, noting that defendant had the "ability to propel the vehicle forward," and to "control the vehicle." Defendant contended that despite the "alleged odor of alcohol," there was no corroborating evidence as to alcohol consumption. Further, defendant asserted that bloodshot or glassy eyes "from a person

---

[2] SCRAM monitoring is the use of a transdermal monitoring device that detects the presence of alcohol in the wearer's sweat. *What is the SCRAM CAM Bracelet and How Does It Work,* https://www.scramsystems.com/scram-blog/what-is-scram-cam-bracelet-how-does-it-work/ (last visited March 11, 2025). SCRAM also offers a GPS monitoring device. SCRAM GPS Ankle Monitor Bracelet, https://www.scramsystems.com/monitoring/scram-gps/ (last visited March 11, 2025).

who works *** in physical labor" was not clear and convincing evidence that he was under the influence of alcohol.

¶ 12    Defendant disputed that his charges involved "the threat of or infliction of great bodily harm or permanent disability or disfigurement." Therefore, he argued, the charges did not constitute detainable offenses. As support, defendant noted that nothing in the police synopsis indicated that he "nearly struck other vehicles" or that the three civilian vehicles mentioned had to move to avoid a collision with defendant. Defendant argued that he did not cause the collisions with the police cars, and, without the police intervention, he would not have struck the tree stump.

¶ 13    In mitigation, defendant noted that he was employed full-time in paving and seal-coating and resides with his mother. Further, defendant has had health challenges in recent years; namely colon cancer involving surgery with some indication that it may no longer be in remission.

¶ 14    Finally, defendant argued that several conditions were available to mitigate the risk of any threat posed by his pretrial release. Specifically, defendant asserted that the trial court could order conditions such as drug and alcohol testing, SCRAM, and EHM.

¶ 15    The trial court granted the State's petition, articulating its reasoning on the record and in a subsequent addendum. The court found by clear and convincing evidence that the proof was evident and the presumption great that defendant committed a detainable offense, that being aggravated fleeing and eluding. The court specifically noted that it did not find the aggravated DUI to be a detainable offense in the instant matter. 725 ILCS 5/110-6.1(a)(1.5) (West 2022). The court explained that defendant's "conduct could have had catastrophic results." Specifically, the court declared that "[d]riving at this rate of speed, disobeying traffic control devices, and driving into oncoming traffic could have resulted in an accident that could have caused great bodily harm or death and therefore *** fits within the statute as a detainable offense." Based on this conduct, the

court stated that "the defendant pose[d] a real and present threat to the safety of the community."
In finding that there were no less restrictive conditions that could mitigate the real and present
threat posed by defendant's pretrial release, the court cited defendant's extensive history of
driving-related offenses, the newly charged criminal offenses despite being on probation for DUI,
supervision for obstructing a police officer, the three additional cases also requiring no additional
criminal offenses, and the violation of the no contact order with Heather in Kane County case No.
24-CM-962. It concluded that defendant had "demonstrated an inability to follow court orders or
other rules set forth by the secretary of state, or directions from law enforcement."

¶ 16    On September 18, 2024, defendant filed a "Motion for Relief Under the Pretrial Fairness
Act" (see Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024)), contesting the trial court's September 15,
2024, detention order. A hearing on the motion for relief was held on September 27, 2024.
Defendant first emphasized his earlier argument that the charge of aggravated fleeing or eluding
was not a detainable offense under section 110-6.1(a) of the Code, because the State had failed to
provide clear and convincing evidence of the threat of great bodily harm, as required by the statute.
725 ILCS 5/110-6.1(a) (West 2022). Defendant argued against the State's reliance on *Brannon* for
the position that defendant's charges were detainable, claiming that there were significant
differences between *Brannon* and the instant case. Specifically, defendant claimed that in the
instant case, he was traveling at lower speeds of 35 to 50 miles per hour, and was driving at "two
in the morning," and thus had less interaction with other people on the road than the defendant in
*Brannon.* Defendant then argued that the court's finding that he was a real and present threat was
against the manifest weight of evidence, in large part because, he asserted, the court improperly
assessed his dangerousness pursuant to the Code. 725 ILCS 5/110-6.1(g)(1)-(9) (West 2022).
Defendant referenced his "long period of law-abiding behavior" in support of his contention that

the dangerousness standard was not met. Finally, defendant contended that the State failed to provide clear and convincing evidence that there were no conditions that would mitigate the real and present threat posed by his pretrial release. In support, defendant again referenced SCRAM and EHM as potential mitigating conditions.

¶ 17　The State defended its application of *Brannon*, and disputed defendant's characterization of the speed and collisions of defendant's vehicle during the commission of the charged offenses. The State clarified that, while the synopsis described the speed limits as varying between 35 and 50 miles per hour, defendant's actual speed was approximately 80 miles per hour. The State added that defendant slowed to between 35 and 40 miles per hour only after the loss of his front tires from the spike strip.

¶ 18　The trial court denied the motion for relief. Citing its review of the record and *Brannon*, the court reaffirmed its earlier ruling that there was clear and convincing evidence that the presumption was great that defendant committed a detainable offense. 725 ILCS 5/110-6.1(a)(1.5) (West 2022). In its finding, the court identified several of defendant's actions, including excessive speeds, failure to obey police instructions to stop, excessive speeds after the loss of his two front tires, and several instances of driving into oncoming traffic within the vicinity of three civilian cars, as contributing to a risk of great bodily harm to members of the community. The court reaffirmed its earlier ruling that there were no less restrictive means than detention to protect the public from the threat posed by defendant.

¶ 19　On November 7, 2024, defendant made an oral motion to modify the conditions of his pretrial detention. Defendant presented medical records from the Kane County Jail and a summary memorandum of a conversation with Heather. Defendant argued that the medical reports supported his pretrial release because "the jail is not the best place *** to have those ongoing symptoms."

Further, defendant contended that Heather had indicated that she did not wish to pursue the matter, that she would like full contact with defendant, and that their fights stemmed from defendant's alcohol use. Defendant then asserted that this indicated that "a lot of [his] issues with the law— have to do with alcohol" and thus SCRAM monitoring would be appropriate and "alleviate the necessity of him being in custody." In addition to requesting pretrial release from detention, defendant also requested that he be allowed to have non-abusive contact with Heather. The State responded that defendant's current medical condition was not new; in fact, he had the medical condition at the time he allegedly committed the charged offenses. Moreover, the State asserted that the medical records indicated that he was seen regularly by doctors and being administered appropriate medication and care. The State further argued that it was necessary for defendant to remain in pretrial detention and that defendant should not be allowed to have contact with Heather. In support, the State referenced defendant's pretrial release conditions in Kane County case No. 24-CM-962, which included no contact with Heather or her residence. It noted that despite those orders, defendant had broken into Heather's residence and pulled her off her bed.

¶ 20    The trial court denied defendant's motion. The court observed that defendant was receiving medical care promptly and did not find that a basis upon which to release defendant. Relying upon a review of the record, the trial court reaffirmed its earlier ruling ordering pretrial detention and the no-contact order with Heather.

¶ 21    On December 2, 2024, defendant filed a second "Motion for Relief Under the Pretrial Fairness Act" (see Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024)) contesting the trial court's November 7, 2024, detention order. A hearing was held on December 4, 2024. Defendant emphasized his prior arguments that SCRAM monitoring could effectively mitigate any real and present threat he posed to Heather or the community. Referring to section 110-6.1(e)(3) of the

Code, defendant argued that "nowhere in the statute does it say that there has to be a high likelihood that he's going to follow this, like a guarantee of success." See 725 ILCS 5/110-6.1(e)(3) (West 2022). The State disagreed with defendant's interpretation of "mitigate," arguing that, "it means reduces, eliminates, takes away, et cetera." The State repeated its assertion that because of defendant's "repeated willful failure to comply with court orders," no condition or combination of conditions could mitigate defendant's danger to the community. The trial court denied defendant's second motion for relief and ordered his continued detention.

¶ 22     On December 5, 2024, defendant timely appealed under Illinois Supreme Court Rule 604(h) (eff. April 15, 2024).

¶ 23                                    III. ANALYSIS

¶ 24     Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). In Illinois, all persons charged with an offense are eligible for pretrial release irrespective of the seriousness or the nature of the offense. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022); *People v. Grayson*, 2024 IL App (4th) 241100-U, ¶ 7. To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (725 ILCS 5/110-6.1(e)(3) (West 2022)).

The Code further requires that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 25    Under the recent supreme court decision in *People v. Morgan*, 2025 IL 130626, ¶ 54, when, as in this case, the parties to a pretrial detention hearing proceed solely on the basis of documentary evidence, and no live testimony is presented, "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." Under *de novo* review, "we perform the same analysis that the trial [court] would perform using the proper standards." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 26    The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal. OSAD elected not to file a memorandum under Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024) (providing that the issues raised in the motion for relief are before the appellate court regardless of whether an optional memorandum is filed). Thus, on appeal, we are limited to the arguments made in defendant's motions for relief. The State filed a response in opposition to the appeal.

¶ 27    On appeal, defendant raises four arguments. First, he argues that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that he committed the offenses charged. Second, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that the offense qualified as a detainable offense under the Acts. Third, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to any person or the community, based on the specific, articulable facts of the case. Finally, defendant argues

that the State failed to meet its burden of proving by clear and convincing evidence that there are no condition or combination of conditions that can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. We do not find any of these arguments persuasive.

¶ 28　　Defendant first argues that the State's synopsis is insufficient to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that he committed the offenses charged because the synopsis failed to include material details. Defendant does not expand on this argument, but rather merely states that the trial court relied on an insufficient synopsis. Here, the proffered police synopsis included the responding police officers' accounts, which detailed the break-in and attack on Heather, the telephonic harassment which followed, defendant's flight from the police, and defendant's behavior while being apprehended. The proffered synopsis detailed defendant's lengthy, high-speed flight from police, refusal to obey the police commands to stop, and multiple entries into oncoming traffic lanes. This proffer, coupled with the State's Petition, was more than sufficient to show by clear and convincing evidence that the proof is evident and the presumption great that defendant committed the charged offenses.

¶ 29　　Next, defendant argued in his first motion for relief that the aggravated-fleeing-and-eluding charge was not a detainable offense, as the State had failed to present clear and convincing evidence of the threat of bodily harm, as required by the Code. See 725 ILCS 5/110-6.1(a)(1.5) (West 2022). In support, defendant contended that no bodily harm was alleged in the charges or exhibits, that he did not strike any civilian cars, and that the civilian vehicles did not have to move to avoid his vehicle. Defendant explained that his collisions with the strike strips, police vehicles, and the tree stump were due to the involvement of "law enforcement intervention."

¶ 30    Under section 5/110-6.1(a)(1.5) of the Code, a court may deny a defendant pretrial release where:

"the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and the defendant is charged with a forcible felony, which as used in this Section, means treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, armed robbery, aggravated robbery, robbery, burglary where there is use of force against another person, residential burglary, home invasion, vehicular invasion, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement *or any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement*." (Emphasis added.) 725 ILCS 5/110-6.1(a)(1.5) (West 2022).

¶ 31    In its memorandum before this court, the State references *Brannon*, 2024 IL App (2d) 240059-U. The State describes *Brannon* as analogous to the instant case, with the defendant in *Brannon* facing charges from fleeing from the police at high speeds in excess of the stated speed limits, ignoring stop signs, striking another vehicle, and crashing. *Id*. ¶ 5. In *Brannon*, the court found that the defendant's flight from police "plainly involved the threat of great bodily harm," adding that "[i]t is only fortuity that [the] defendant did not cause a serious injury." *Id*. ¶ 21. The State emphasizes the similar facts in the instant case: the flight from police at speeds exceeding 75 miles per hour, disobeying multiple traffic signals and signs, driving on flat tires after the strike strip deployment, collisions with police vehicles, and driving on the wrong side of the road into oncoming traffic. We find *Brannon* applicable to the case at hand because of the similarity of the

specific and articulable facts and do find that the State met its burden of presenting clear and convincing evidence of the threat of bodily harm, as required by the Code to render the aggravated-fleeing-and-eluding charge a detainable offense.

¶ 32    Next, defendant argued in both of his motions for relief that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. In his first motion for relief, defendant argued that his dangerousness was improperly weighted because there was no evidence of "viable violence or threats," his criminal history was "largely remote in time and nonviolent," and he was complying with his current probation sentence. In his second motion for relief, defendant referenced the Code and its requirement that "at each subsequent appearance *** the judge must find that the continued detention is necessary" regarding a defendant's threat to any person or the community. 725 ILCS 5/110-6.1(i-5) (West 2022).

¶ 33    In considering whether a defendant poses a real and present threat to the safety of any person or the community, the Code provides that the trial court may consider evidence or testimony concerning factors that include, but are not limited to (1) the nature and circumstances of any offense charged, including whether the offense was a crime of violence, involved a weapon, or was a sex offense; (2) the history and characteristics of the defendant, including the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior or lack of such behavior and the defendant's psychological history or lack of such history; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any

victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or other form of supervised release from custody; and (9) any other factors, including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)), deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g)(1)-(9) (West 2022).

¶ 34    In this case, the synopsis indicated that the nature and circumstances of the charged offenses included violence, involving defendant breaking into Heather's home and throwing her off her bed. See 725 ILCS 5/110-6.1(g)(1) (West 2022). At the time of the charged offenses, defendant was on pretrial release from previous domestic incidents with Heather, which included a condition that he not be at her residence. See 725 ILCS 5/110-6.1(g)(8) (West 2022). Through these charged offenses and prior ones, defendant has demonstrated that he is a threat to Heather in particular, and, through his driving behavior, a threat to the community at large. See 725 ILCS 5/110-6.1(g)(3) (West 2022).  Defendant's criminal record includes prior convictions for felonies, at least three prior violent convictions, prior domestic incidents, alcohol abuse, and driving without a license. See 725 ILCS 5/110-6.1(g)(2)(A) (West 2022). Although defendant claimed to be complying with his current probation sentence, the record would suggest otherwise, as the conditions of his probation require no new offenses. In fact, at the time of the charged offenses, defendant was on probation for aggravated DUI in De Kalb County, was on supervision for obstructing a peace officer in Kane County, and was on pretrial release in three separate Kane County cases for resisting a peace officer, criminal damage to property, and disorderly conduct.

See 725 ILCS 5/110-6.1(g)(8) (West 2022). After assessing the statutory factors, we agree with the trial court that defendant poses a real and present threat to Heather and the community.

¶ 35    Next, defendant argued in his motions for relief that the State failed to meet its burden of proving by clear and convincing evidence that there are no condition or combination of conditions that can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. Defendant contends that the combination of SCRAM and EHM would mitigate the threat.

¶ 36    In determining which conditions of pretrial release, if any, will ensure the safety of any person or persons or the community, the trial court may consider the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1)-(5) (West 2022). No one factor is dispositive. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 12.

¶ 37    After a review of the factors listed in section 110-5, we conclude that the trial court did not err in denying defendant's pretrial release. We recognize, as the trial court did, that defendant has not possessed a valid license since 2010, yet has continued to drive. He has a history of driving-related offenses, including driving with a revoked license, driving under the influence, and prior fleeing and eluding convictions. Defendant is currently on probation for driving under the influence, is on supervision for obstructing a police officer, and is on pretrial release in three additional cases. Conditions of release required defendant to abstain from committing any other offenses and to stay away from Heather. We conclude, as did the trial court, that defendant

demonstrates a complete disregard for the law, court orders, and law enforcement directions. Considering defendant's criminal history and his long history of repeatedly and flagrantly disregarding any court-imposed restrictions on his driving, we conclude that SCRAM or EHM would be insufficient to ensure the well-being of the community at large. We agree with the State's contention that "SCRAM doesn't tell us if he is driving. EHM doesn't tell us if he is drinking." Accordingly, we conclude that the State proved by clear and convincing evidence that there are no condition or combination of conditions that can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case.

¶ 38 Finally, defendant argues that he should be released due to concerns over his health. Defendant contends that abdominal pain and bloody stool symptoms require him to be released because "the jail is not the best place for him to have those ongoing symptoms." Yet, defendant neither provided any evidence nor testified that he was not receiving appropriate medical care. While defendant does have legitimate health concerns, we agree with the trial court that these concerns do not outweigh the real and present threat to public safety posed by defendant's pretrial release. Importantly, we agree with the trial court's assessment that defendant is receiving proper health care while he is detained pending trial.

¶ 39                                    IV. CONCLUSION

¶ 40 For the reasons set forth above, we affirm the judgment of the circuit court of Kane County.

¶ 41 Affirmed.